GEORGE W. HOLLETT *v.* WILMINGTON TRUST COMPANY and JAMES H. HUGHES, JR., Executors of Eli Nichols, Deceased.

*(May* 4, 1934.)

LAYTON, C. J., RODNEY and REINHARDT, J. J., sitting.

*William H. Bennethum* (of Marvel, Morford, Ward and Logan) for plaintiff.

*Clarence A. Southerland* (of Ward and Gray) for defendants.

Superior Court for New Castle County, No. 228, September Term, 1933.

LAYTON, C. J., delivering the opinion of the Court:

The plaintiff's declaration alleges that the defendants' testator, Eli Nichols, alienated and destroyed the affection of the plaintiff's wife, whereby the plaintiff lost her comfort, fellowship, society, aid and assistance.

To the declaration the defendants have demurred specially, contending that the cause of action abated with the death of Eli Nichols, and does not survive under *Revised Code* 1915, § 4154, which is as follows:

"In all personal actions, except actions for assault and battery, defamation, malicious prosecution, or any injury to the person, or upon penal statutes, the cause of action shall survive to and against the executors, or administrators, of the person to, or against whom, the cause of action accrued. * * *"

The precise question for determination, therefore, is whether the alienation of the affection of a wife is an injury to the person of the husband which, under the excepting clause of the statute, abates upon the death of the wrongdoer; or, is such a violation of the right of a husband to the consortium of his wife, an injury to a property right from which a cause of action arises which survives under the general language of the statute.

The statute, substantially in its present form, was enacted in 1829, and it should be construed with reference to the principles of the common law in force at the time of its passage. 59 *C. J.* 1039; *State v. Donovan,* 5 *Boyce* 40, 90 *A.* 220. Words used in a statute which have a definite and settled meaning at common law are presumed to be employed in the same sense, and will be so construed, unless a contrary intent clearly appears. 59 *C. J.* 1039; *Petts v. Ison,* 11 *Ga.* 151, 56 *Am. Dec.* 419; *Garrison v. Burden,* 40 *Ala.* 513; *Russell v. Sunbury,* 37 *Ohio St.* 372, 41 *Am. Rep.* 523.

That, at the common law of this period, the classifica-

tion of actions was well defined and understood, sufficiently appears in 1 *Chitty Pl.* (*Ed.* 1825) 59. The distinction between actions for injuries to the person, and to personal and real property is carefully drawn.

The ancient maxim of the common law, *actio personalis moritur cum persona,* once applicable alike to contractual and delictual duties and obligations, at the time, had been with respect to the survival of contractual rights and duties, narrowed greatly by natural forces, judicial reasoning and decision, at work in the common law, but in the field of tort, the first relaxation of the maxim was accomplished by the statute 4 *Edw.* 111, *c.* 7, giving executors a remedy where there was an asportation of, or damage done, to chattels of the testator; but it is to be noted that the statute did not give the executor a right of action for injuries to the person or character of the testator, nor a right of action against executors. The estates of decedents were not made liable for trespass until later, and this was by the application of the doctrine that actions based on property do not die with the person, subject, however, to the limitation that the tort complained of, in order to give a right of action as against the representative of the wrongdoer, must operate to the increase of his estate. 3 *Street, Foundations,* 70; *Hambly v. Trott, Cowp.* 371; *Phillips v. Homfray,* 24 *Ch. D.* 439. So, *Chitty, supra,* declared the law to be:

"In the case of injuries to the person, whether by assault, battery, false imprisonment, slander or otherwise, if either the party who received or committed the injury die, no action can be supported either by or against the executors or other personal representatives; for the statute 4 *Edw.* 111, *c.* 7, has made no alteration in the common law in this respect."

And, page 82:

"At common law upon the death of the wrongdoer, the remedy for wrongs *ex delicto,* and unconnected with contract, in general determines, and as the statute 4 *Edw.* 111, *c.* 7, does not give any remedy against personal representatives, we shall find that few actions in form *ex delicto,* and in which the plea would be not guilty,

can be supported against the executor or administrator of the party who committed the injury."

The authority for these conclusions is *Hambly v. Trott, supra.* This great case, decided by Lord Mansfield in 1776, held that the action of trover did not survive against the representative of the deceased converter of chattels. This case is of such moment that it has been said, and it is doubtless true, that in a common law jurisdiction the law with respect to survivability of actions for torts is to be determined by a reference to the doctrine stated by Lord Mansfield, the statute of *Edw.* 111 and the statutory enactments of the state. Note to *Boor v. Lowrey* (103 *Ind.* 468, 3 *N. E.* 151), 53 *Am. Rep.* 530. See, also, *R. C. L. Abatement and Revival.*

■ Criminal conversation, seduction and alienation of affections are terms used to denote wrongs done to marital rights; and the form of action is *ex delicto* and the plea is not guilty.

At first, with regard to criminal conversation, the form of action was trespass *vi et armis,* as the wife was a chattel of the husband, a part of his person, and could not consent to the wrong to the husband. 3 *Blackstone* 140; *Reeves, Domestic Relations* (2d *Ed.*) 64; *Dixon v. Amerman,* 181 *Mass.* 430, 63 *N. E.* 1057. And this form of action was employed as late as 1805, *Macfazden v. Olivant,* 6 *East.* 387, where it was suggested that properly the action should be in case. As early as 1745, it was held that a husband could maintain an action for the wrongful alienation of his wife's affections, *Winsmore v. Greenback, Willes Rep.* 517, and since that time the right of action has been recognized both in England and in the United States. 13 *R. C. L.* 1458.

■ Whether an action survives depends generally upon the nature of the action, and not upon its form. *State ex rel. Brumley v. J. & M. Paper Co.,* 3 *Boyce* 118, 80 *A.* 350.

██ Considering, therefore, the nature of the action under consideration, its form and appropriate plea, it must be that it is one of the "many other cases of like kind" which does not survive against a personal representative, as ruled by Lord Mansfield in *Hambly v. Trott;* and it would be a bold barrister indeed who would have dared to argue before that judge that a right of action arising out of an injury done to the marriage relation was not an injury to the person, or was so founded on property, or property right, that it survived the death of the wrong-doer. Such was the state of the common law with respect to a right of action for an injury of this character, at the time of the enactment of the survival statute. Injuries to the person and character now represent the final intrenchment of a doctrine once applicable to all personal obligation whether of contract or tort. 3 *Street,* 71.

██ It is not to be doubted that the Legislature may accomplish the survivability of actions to recover damages for all manner of injury to the person, and in 1866, by *Chapter* 31, *Vol.* 13, *Del. Laws,* now *Revised Code* 1915, § 4155, the Legislature did provide for the survivency of actions to recover damages for injuries to the person by negligence or default, that is, for injuries of a physical character; but where the rules of the common law prevail those rules still determine the survivency of actions for torts except as modified or changed by statute. *Hegerich v. Keddie,* 99 *N. Y.* 260, 1 *N. E.* 787, 52 *Am. Rep.* 25.

██ The question of the survivability of an action of this character depends upon the statutes of the jurisdiction in which the question arises. Thus in *Powers v. Sumbler,* 83 *Kan.* 1, 110 *P.* 97, it was held that an action for the alienation of affections did not abate under a general survival statute excepting from its operation certain actions specifically named among which the action for alienation of affections was not included. Likewise, in *C v. D,* 10 *Ont.*

*L. R.* 641, the action for criminal conversation was held not to abate under a statute enabling personal representatives to maintain actions for all torts.

But there seems to be no dissent from the doctrine that a cause of action for alienation of affections, or for criminal conversation, does not survive under a survival statute excepting from its operation injuries to the person. 1 *C. J.* 204; 21 *Ency. Pl. & Pr.* 349; *White v. Safe Deposit & Trust Co.,* 140 *Md.* 593, 118 *A.* 77, 24 *A. L. R.* 482; *Garrison v. Burden,* 40 *Ala.* 513; *Clarke v. McClelland,* 9 *Pa.* 128; *Gross' Adm'r v. Ledford,* 190 *Ky.* 526, 228 *S. W.* 24, 14 *A. L. R.* 689, where under a statute providing that no right of action for personal injury shall cease or die except actions for criminal conversation, it was held that the action for alienation of affections was of the same nature and genus as one for criminal conversation, and accordingly did not survive.

In *Taylor v. Bliss,* 26 *R. I.* 16, 57 *A.* 939, it was held that a delinquent defendant in a judgment recovered against him for the malicious alienation of affections of the plaintiff's wife, was not liable to imprisonment for debt under a statute excepting from its provisions debts recovered for malicious injury to the person.

Other decisions are not, perhaps, inapposite. In *Justice v. Clinard,* 142 *Tenn.* 208, 217 *S. W.* 663, the survival statute excepted actions for wrongs affecting the character of the plaintiff, and it was held that an action for alienation of a wife's affection abated, where the husband died before trial, as such action involved the character of the husband. In *Sunanday v. McKently,* 244 *Pa.* 533, 90 *A.* 799, the action was against the defendant as executrix for criminal conversation of her testator with the plaintiff's wife, under a statute limiting, as construed by the Court, the survivency of actions to injuries wrongfully done to the person of another as might or might not result in death;

and it was held that the action brought did not survive the death of the wrongdoer. Likewise in *Dixon v. Amerman,* 181 *Mass.* 430, 63 *N. E.* 1057, where a wife sued another woman alleging adultery with the plaintiff's husband and the consequent loss of his society, and, pending the action, the defendant died, it was held that the action did not survive under a statute as an action of tort for assault, battery, imprisonment or other damage to the person, as the statute manifestly meant only damage of a physical character. To the same effect is *Howard v. Lunaburg,* 192 *Wis.* 507, 213 *N. W.* 301, 57 *A. L. R.* 346. From these cases, last cited, the principle may be deduced that this kind of action is not to be construed as one that survives unless the language of the statute imperatively requires such a construction. 53 *Am. Rep.* 530.

Likewise, where pending an action brought by a plaintiff for the seduction of his daughter, the defendant died, it was held that the action abated. *Brawner v. Sterdevant,* 9 *Ga.* 69; *Holliday v. Parker,* 23 *Hun* (*N. Y.*) 71.

And so as to an action for breach of promise of marriage, at least in the absence of averment and proof of special damage, although the action is, in form, contractual. 1 *R. C. L.* 41; *Chamberlain v. Williamson,* 2 *M. & S.* 408; *Hayden v. Vreeland,* 37 *N. J. Law* (8 *Vroom*) 372, 18 *Am. Rep.* 723.

In *Crane v. Ketcham,* 83 *N. J. Law* 327, 84 *A.* 1052, relied upon by the plaintiff as holding that alienation of affections is not an injury to the person, the Court was not construing a survival statute but a statute of limitations with respect to injuries to the person caused by neglect.

But, the plaintiff contends that the wrong known as alienation of affections is an injury to property and not to the person, and, consequently, the action is not within the exception of the statute. What already has been said sufficiently answers this contention, but the cases cited

by the plaintiff will be grouped and discussed briefly. In group (1) are the Delaware cases. *Eliason v. Draper*, 2 *Boyce* 1, 77 *A*. 572, and *Lupton v. Underwood*, 3 *Boyce* 519, 85 *A*. 965, and *Foot v. Card*, 58 *Conn*. 1, 18 *A*. 1027, 6 *L. R. A*. 829, 18 *Am. St. Rep*. 258; *Warren v. Warren*, 89 *Mich*. 123, 50 *N. W*. 842, 14 *L. R. A*. 545; *Deitzman v. Mullin*, 108 *Ky*. 610, 57 *S. W*. 247, 22 *Ky. Law Rep*. 298, 50 *L. R. A*. 808, 94 *Am. St. Rep*. 390; *Noxon v. Remington*, 78 *Conn*. 296, 61 *A*. 963; *Price v. Price*, 91 *Iowa* 693, 60 *N. W*. 202, 29 *L. R. A*. 150, 51 *Am. St. Rep*. 360; *Westlake v. Westlake*, 34 *Ohio St*. 621, 32 *Am. Rep*. 397. These cases are not concerned with the survivability of actions. They deal with the right of a wife to maintain an action for alienation of affections, or similar actions, remedy for which was denied a wife at the common law. They establish the right on the part of the wife to prosecute such action without joining her husband, either unaided by statute, on the broad ground that the right of consortium is a valuable property right as much so to the wife as to the husband, and that the husband and wife should stand equally before the law with respect to an invasion of the marital right; or, under statute for the protection of married women, those in Delaware giving a wife, living apart from her husband the right to sue in her own name for the redress of her personal wrongs, torts or private injuries (*Chapter 80, Vol. 14, Laws of Del.*, as amended by *Chapter 611, Vol. 17*) and giving a married woman the right to prosecute actions for the preservation or protection of her property (*Chapter 550, Vol. 14, Laws of Del.*). These cases hold that the right of a wife to the consortium of her husband is a property right.

In group (2) are *Tinker v. Colwell*, 193 *U. S*. 473, 24 *S. Ct*. 505, 48 *L. Ed*. 754, and *Leicester v. Hoadley*, 66 *Kan*. 172, 71 *P*. 318, 65 *L. R. A*. 523. These cases, likewise, have nothing to do with survivency of actions. They are concerned with a construction of the *Bankruptcy Act* (§ 17, 30

*Stat.* 550) providing that "a discharge in bankruptcy shall release a bankrupt from all of his provable debts, except such as * * * are judgments in actions * * *. for willful and malicious injuries to the person or property of another." In the first mentioned case, and the other is a similar one, the bankrupt was defendant in a judgment recovered against him for criminal conversation. Upon his discharge in bankruptcy he applied for an order directing the judgment to be cancelled of record, on the ground that the basis of the judgment was not a willful and malicious injury to person or property. The Court denied the application holding that the exclusive right of a husband to marital intercourse with his wife might properly be described as a property right.

Conceding that the right of consortium is, in the broadest sense, a property right, it does not follow that it is that kind of property for an injury to which a right of action was given executors under the statute *Edw.* 111, *supra,* or to personal representatives generally under the common law as it was developed, or a right of action which survives as against a wrongdoer either at common law or, by implication, under survival statutes. The right of consortium possesses none of the attributes of property in the accepted sense of the word. It arises by virtue of the marital relation. It is purely personal. It cannot be bought and sold, and no pecuniary value can be placed upon it for that purpose. It is in the husband, or the wife, and dies with him or her. 1 *R. C. L.* 46. The right of action arising from seduction is not assignable. *People v. Tioga C. P.,* 19 *Wend.* (*N. Y.*) 73. A right of action for breach of promise of marriage does not constitute the person in whom that right lies a creditor of a decedent's estate. *Stebbins v. Palmer,* 1 *Pick.* (*Mass.*) 71, 11 *Am. Dec.* 146. Nor would such a right of action pass to an assignee in insolvency, nor to an executor so as to make him liable for a devastavit upon neglect to prosecute. *Lattimore, et al., Ex'rs, v. Simmons,* 13 *Serg. & R.* (*Pa.*) 183; *North v. Turner,* 9 *Serg. & R.*

(*Pa.*) 244. Generally, a trustee in bankruptcy does not take title to a right of action for a purely personal tort. *Sibley v. Nason,* 196 *Mass.* 125, 81 *N. E.* 887, 12 *L. R. A.* (*N. S.*) 1173, and *note,* 124 *Am. St. Rep.* 520, 12 *Ann. Cas.* 938, and *note; In re Haensell* (*D. C.*), 91 *F.* 355. A right of action for personal injuries resulting from negligence is not assignable before judgment in the absence of a statutory provision to the contrary. *Weller v. Jersey City, etc., R. Co.,* 68 *N. J. Eq.* 659, 61 *A.* 459, 6 *Ann. Cas.* 442. Generally assignability and survivability of causes of action are convertible terms. 1 *R. C. L.* 32; 5 *C. J.* 886. *Street, Vol.* 3, 86, sums up as follows:

"As regards particular results, it is pretty generally held in America that the only causes or rights of action which are not transferable or assignable in any sense are those which are founded upon wrongs of a purely personal nature, such as slander, assault and battery, negligent personal injuries, criminal conversation, seduction, breach of marriage promise, malicious prosecution and others of like nature."

The conclusion must be that the interpretation given to the married women's acts affording a wife a right of action for the alienation of the affections of her husband, based upon the conception of the right of consortium as a species of property, was not intended to trench upon, modify, enlarge or in any manner to interpret the statutes relating to survivency of actions. It would be a curious result indeed if the Courts in their laudable efforts to place husband and wife equally before the law by enabling a wife, under acts for her protection, to sue for the alienation of her husband's affections as and for an injury to a property right, should give indirectly such right of action generally the qualities of assignability, survivability and the usual attributes of property, and thus, by judicial decision, to abrogate the common law and to enlarge the statutes governing the survivency of actions.

It is clear that the wrong alleged in the declaration is an injury to the person within the meaning of the statute,

which does not survive the death of the alleged wrong-doer. If such right of action shall survive, legislative action will be necessary. The demurrer is sustained.