Albert J. STIFTEL, Andrew D. Christie, George R. Wright, Robert C. O'Hara, Vincent A. Bifferato, Clarence W. Taylor, Joseph T. Walsh, Claud L. Tease, William G. Bush, III, Bernard Balick and Joseph J. Longobardi, Plaintiffs,

v.

John E. MALARKEY, Donald Dryden, the State of Delaware and Mary Jornlin, Defendants.

Court of Chancery of Delaware, New Castle County.

Submitted Feb. 11, 1977.

Decided July 22, 1977.

Victor F. Battaglia and Samuel R. Russell of Biggs & Battaglia, Wilmington, for plaintiffs.

Regina M. Small, Deputy Atty. Gen., Dept. of Justice, Wilmington, for defendants.

### DECISION AFTER TRIAL.

### JUDGMENT FOR DEFENDANTS.

BROWN, Vice Chancellor.

■ This is an action brought by the eleven judges who comprise the Superior Court of the State of Delaware. The defendants are sued in their official capacities as Secretary of the Department of Finance, State Budget Director and State Treasurer. The suit seeks a mandatory injunction against the defendants requiring them to cause the plaintiff judges to be paid certain cost-of-living benefits in addition to their regular salaries for the balance of their respective judicial terms. The complaint also seeks a judgment requiring that plaintiffs be paid a monetary sum equivalent to the total cost-of-living benefits which plaintiffs feel they should have been paid from the effective date of the legislative act relied upon to the present. This is a decision after trial.[1]

The elements upon which decision must be based are composed of three separate legislative enactments of the General Assembly together with events preceding the enactment of the first of the three. By Executive Order Number Fifty-Five, signed by the Governor on September 30, 1974, the continual salary demands being made by State employees because of inflation was recognized, and because thereof, and based upon the premise that all State employees should be compensated on an equitable basis, the Executive Order created a "Governor's Task Force on Cost-of-Living Pay Increase Formulas." This Task Force was charged with the responsibility of reviewing all pay scales used in compensating state employees and with analyzing various cost-of-living formulas to determine the most feasible formula for use by the State. The Task Force was further directed to evaluate

---

1. It must be noted at the outset that since the theory of plaintiffs' case is that the cost-of-living benefits claimed are extended to all members of the State judiciary—and thus to them individually as judges of the Superior Court—it necessarily follows that the members of this Court have a potential financial interest in the outcome. For the reasons given in *Stiftel v. Carper*, Del.Super., 378 A.2d 124, decided this same date, I have concluded, with the consent of counsel, that it is both necessary and proper that I make at least this initial determination despite the above factor which would otherwise dictate disqualification. In short, this reason for disqualification would disqualify all other judges in this State as well and would leave plaintiffs without a forum in which to litigate the personal rights which they claim.

Also, plaintiffs seek injunctive relief, and under our system this Court is the only trial level court with such equitable jurisdiction. See *Evans v. Gore*, 253 U.S. 245, 40 S.Ct. 550, 64 L.Ed. 887 (1920).

Likewise, since an argument could be made that the proper action to compel governmental officials to carry out their ministerial duties is one which lies in mandamus in a court of law, it seems appropriate to note that since a mandamus action is within the jurisdiction of the Superior Court under our system, and since it is the entire membership of that Court who are the plaintiffs seeking the relief, their reasonable decision not to file their suit before their own Court has left them without an adequate remedy at law, as I view it, thus allowing this Court the discretion to take jurisdiction.

the cost for a cost-of-living formula recommended for the following three years and to draft proposed legislation for the implementation of such plan. As a result of the efforts of the Task Force, Senate Bill 395, as amended as to portions not relevant here, was adopted. Enacted into law as of June 30, 1975 as 60 *Del.L.* Ch. 187, Section 1 thereof amended 29 *Del.C.* Ch. 65 by adding a new § 6532 to read as follows:

"§ 6532. *Cost-of-Living Salary Supplements*

"(a) *All employees of the State* shall be paid a salary supplement as a percentage of their base pay equivalent to the percentage change in the Consumer Price Index for the Philadelphia region. The Consumer Price Index figure at the beginning of each calculation period shall be subtracted from the Consumer Price Index at the end of the calculation period, multiplied by one hundred and divided by the Consumer Price Index at the beginning of the period to determine the percentage of increase or decrease for cost-of-living for that period. This calculation shall be made each six month period ending December 31 and June 30 and become effective for each succeeding six month period beginning April 1 and October 1 respectively. The supplement percentage may not exceed ten percent on an annual basis.

\* \* \* \* \* \*

"(c) *For purposes of this section*, an *'employee' is* defined as *one who works* the regularly scheduled full-time hours of the employing agency or *at least 30 or more hours per week or 130 hours per month* (with allowable interruptions) throughout the year *and is compensated with a regular state pay check*." (Emphasis added.)

One year later, on July 1, 1976, as part of House Bill 1274, an act making appropriations for the expense of State government for the fiscal year ending June 30, 1977 (commonly referred to as the "budget bill"), and at Section 53 thereof, the following amendments to this new § 6532 were adopted:

"Section 53. (a) Amend Chapter 65, Title 29, Section 6532(a), Delaware Code, by striking said subsection (c) in its entirety.

\* \* \* \* \* \*

"(d) Amend Chapter 65, Title 29, Section 6532(a), Delaware Code, by inserting immediately after the word 'State' and before the word 'shall' as the same appear in said section the following:

" ', except elected and appointed officials,' "

While there is inconsistent terminology employed in Section 53(a) of House Bill 1274, it seems that its obvious purpose was to strike in its entirety the definition of the term "employee" as originally contained in § 6532(c) and, by adding the new qualifying language to § 6532(a), to make it clear that all State employees except elected and appointed officials were entitled to the cost-of-living benefits provided by § 6532(a) regardless of the hours worked.

Still later, by House Bill 1306 signed into law on August 3, 1976, a further amendment was made to § 6532 as follows:

"Section 1. Amend Section 6532(a), Title 29, Delaware Code by striking the words ', except elected and appointed officials,' after the word 'State' and before the word 'shall' of said subsection and substituting in lieu thereof the following words:

", except elected officials, the judiciary, cabinet secretaries and members of boards and commissions,'.

"Section 2. Amend Section 6532, Title 29, Delaware Code by adding a new subsection which shall read as follows:

"(c) For purposes of this section, an 'employee' is defined as one who is compensated with a regular State pay check.

"Section 3. The effective date of this Act is July 1, 1976."

The legislative synopsis appearing at the bottom of House Bill 1306 provides the following notation as to its purpose:

"This Bill clarifies the intent of House Bill No. 1274 as amended and enacted for

the exclusion of the above-stated positions from receipt of cost-of-living salary adjustments and provides for the definition of an 'employee' previously deleted in the statutes."

Based upon this sequence of legislative enactments plaintiffs contend that when 29 *Del.C.* § 6532 was first adopted it clearly included members of the State judiciary within its scope. They say this is amply illustrated by the fact that the General Assembly went to the trouble of two subsequent amendments in an effort to remove them. They further take the position, however, that the amendatory acts were ineffective in view of Article XV, § 4 of the *Delaware Constitution of 1897* which provides that

"No law shall extend the term of any public officer or diminish his salary or emoluments after his election or appointment."

They argue that once the cost-of-living salary supplement was extended to them by the adoption of Senate Bill 395, it became an emolument of office which could not thereafter be taken away.[2]

Plaintiffs further take the position that Senate Bill 395, and the definition of covered employees contained therein, is clear on its face and requires no construction. Should statutory construction be required, however, they place reliance on two other factors which they feel clearly establish an original legislative intent to apply the cost-of-living benefits to public officers of the State, including the judiciary, as well as to other State employees.

First, the legislative discussions of Senate Bill 395 prior to its adoption were transcribed and placed into evidence. Considering the nature and cost of the proposed legislation, these discussions were relatively brief. From their content there is no specific indication that anyone other than members of the General Assembly were to be excluded from coverage. Mr. Malarkey, the Secretary of Finance, was called to the floor of both the Senate and House of Representatives to explain Senate Bill 395 and to answer questions concerning it. Malarkey was also the head of the Governor's Task Force which drafted and proposed the legislation. No questions were asked concerning whether or not the members of the judiciary and other public officers were intended to be included, nor was any mention of the point made by Malarkey. At best, he did point out that the bill contemplated cost-of-living benefits for some 1200 "exempted" State employees as well as, apparently, employees within the State merit system. Mr. Malarkey also indicated that he considered the bill to extend its benefits to him as a Department head and governmental officer.

Secondly, plaintiffs rely on the testimony of Donald Dryden, then the State Budget Director. It is to be recalled that one of the functions of the Governor's Task Force was to determine the amount of money that would be necessary to fund such cost-of-living plan as might be recommended and adopted. Mr. Dryden was given the responsibility of making this cost estimate. Being without guidelines, he did so by the simple method of going through the State budget and adding up the salaries of all persons in the employ of the State (with one exception which is not material here). In the process, he included the salaries of all members of the judiciary. To the total figure obtained was applied an estimated cost-of-living increase percentage so as to arrive at an amount to be appropriated by Senate Bill 395 to cover the first-year cost of the salary supplement created by the bill.

Thus plaintiffs argue that since there is no indication in the legislative discussions that they were not to be included, and since judicial salaries were included along with all others in calculating a first-year appropriation to fund the cost-of-living supplement created, then any ambiguity in 29 *Del.C.* § 6532 must be resolved in favor of the obvious intention of the General Assem-

---

2. For the purpose of this decision defendants concede that plaintiff judges are public officers within the meaning of Article XV, § 4. Compare *Todd v. United States*, 158 U.S. 278, 15 S.Ct. 889, 39 L.Ed. 982 (1895).

bly to extend the cost-of-living supplement to members of the judiciary as well as other qualifying State employees.

The record indicates that plaintiffs are paid by a regular State paycheck and that they work at least 30 hours per week or 130 hours per month throughout the year. It is not disputed that they were doing so on June 30, 1975 when 29 *Del.C.* § 6532 became effective in its original form and that consequently they met this standard for entitlement to the cost-of-living benefits. However, no cost-of-living benefits have ever been paid to plaintiffs pursuant to § 6532 even though such salary supplements have been extended to other State employees during the interim. Thus the basis for plaintiffs' suit to enforce their claimed rights under the statute.

From the foregoing it seems clear that the outcome must turn on the meaning of the term "employee" as defined in subsection (c) of § 6532 as originally enacted. For unless the plaintiffs were included under that subsection there is no need to consider whether, in view of the general application of the cost-of-living supplement, it could be said to constitute an emolument as applied to judicial office which could not thereafter be withdrawn by the General Assembly. As I view it, plaintiffs were not covered by the initial enactment and, since the subsequent amendments went only to clarify the fact that elected and appointed officials, and thus public officers, were not included, it follows that judgment must be granted in favor of the defendants. I offer the following as my reasoning in reaching this conclusion.

As stated at 63 *Am.Jur.2d* 634, Public Officers And Employees § 11.

"Although every public office may be an employment, every public employment is not an office, and constitutional, statutory, and charter provisions referring to 'employees' or 'workmen' have generally been construed as not including public officers."

In this State this general principle was recognized in *Wharton v. Everett*, Del.Super., 229 A.2d 492, 494 (1957) wherein it was stated as follows:

"Members of boards or commissions in this State, unless provided for otherwise by legislation, are not employees in the usual sense of the word or within the meaning of the Pension Law. Historically they have been regarded as public officers and not public employees."

 This seems to have a certain amount of obvious logic to it. A public office is distinguished from mere public employment because the former carries with it, among other things "the authority and duty to exercise some part of the sovereign power of the state either in making, administering or executing the laws of the State." *State ex rel. Biggs v. Corley*, Del.Ct. in Banc, 6 W.W.Harr. 135, 172 A. 415, 419 (1934). See also *Martin v. Trivitts*, Del.Super., 9 Terry 368, 103 A.2d 779 (1954); *State ex rel. Green v. Glenn*, Del.Super., 9 W.W. Harr. 584, 4 A.2d 366 (1939); *Wharton v. Everett, supra.* Since this legal distinction has developed despite the fact that both public officers and public employees work for and are compensated by the State, then consistent adherence to it would seem to dictate that when the General Assembly chooses to use the term "employee" in a statute as part of making, administering and executing the law of the State, it should not be interpreted as also including "public officers" unless it is clearly so expressed.

 As first enacted by Senate Bill 395, § 6532(a) provided that "[a]ll employees of the State" would be entitled to receive the cost-of-living pay supplement. Thus, without more, there would be no question that the plaintiffs were not included. Words used in a statute which have a definite and settled meaning at common law are presumed to be employed in the same sense, and will be so construed unless a contrary intent clearly appears. *Hollett v. Wilmington Trust Co.*, Del.Super., 6 W.W.Harr. 170, 172 A. 763 (1934).

Plaintiffs urge, however, that the General Assembly removed this impediment by adding the specific definition of the term

"employee" at subsection (c) of § 6532, and by making it sufficiently broad so as to include public officers as well. They lay emphasis on the following portions of § 6532(c):

> "(c) For purposes of this section an 'employee' is defined as *one who works* . . . at least 30 or more hours per week or 130 hours per month (with allowable interruptions) throughout the year and is compensated with a regular pay check."

Thus they say that the General Assembly deliberately extended the cost-of-living benefits to *all* who worked for the State at the time, and who put in the required hours and received a regular paycheck. This, however, reads something into the definition which is not there. The definition does not state that it applies to "all" who work for the State or to "any person" who works for the State; rather, by the language "an 'employee' is . . . one who works" the statutory language causes the qualifications which follow thereafter to relate back to the term "employee" as used within the contemplation of § 6532(a). In other words, fairly read, the definition qualifies which employees of the State are entitled to the cost-of-living benefits rather than to expand by implication the generally accepted common law meaning of the term "employee."

At best, it is not a clear expression of an intent to treat public officers as included within the meaning of the term "employees" as used in § 6532(a) even if that was the purpose of the definition.

To the extent that plaintiffs offer the record of the legislative debates to strengthen their interpretation of the intent of § 6532(c), it also fails to be persuasive. While in certain cases reference may be made to a message of the Governor and other matters constituting a part of the legislative record in order to establish the purpose of a legislative bill, where such reference reveals nothing more than is shown in the bill itself it is of no assistance. *Clendaniel v. Conrad*, Del.Supr., 3 Boyce 549, 83 A. 1036 (1912). Such is the situation

here as I view the record. The bill in question contains no definitive language one way or the other on whether members of the State judiciary and other public officers were within its intended coverage. With the lone exception that members of the General Assembly were not to be included, neither do the debates and discussions in the Senate and House of Representatives to any meaningful degree. Absence of expression does not seem to provide a healthy basis for a court to conclude that a special meaning was intended for a term having a generally accepted statutory significance.

As to the computations made by the Budget Director for funding purposes, his testimony acknowledged that he was given no guidelines, and that consequently he utilized the budgeted salaries of all State employees and public officers (including that of the General Assembly as well as the Governor, who, by the Constitution, cannot receive an increase in pay while in office) presumably to be on the safe side. Nor do the legislative debates make it clear that the General Assembly was aware that judicial salaries had been included in computing the first-year appropriation attached to Senate Bill 395. As such, this element also lacks persuasive value.

The duty of a court is to give the words of a statute a reasonable and sensible meaning and to take into consideration the meaning naturally attaching to them from the context and to adopt that sense of the word which best harmonizes therewith. *E. I. duPont De Nemours & Co. v. Clark*, Del. Ch., 32 Del.Ch. 313, 85 A.2d 721 (1952), *reversed* 32 Del.Ch. 527, 88 A.2d 436 (1952). Having done so, I am convinced that the purpose of the definition contained in subsection (c) of 29 *Del.C.* § 6532 as originally enacted was to limit and qualify which employees of the State would be entitled to the cost-of-living pay supplements authorized by subsection (a) and that it was not intended to expand the term "employees" as used in subsection (a) to include public officers and members of the State judici-

ary.[3] The subsequent amendments to 29 *Del.C.* § 6532 leaving no doubt as to this intention thereafter, it naturally follows that defendants are entitled to judgment. Order on notice.

---

3. Compare also 29 *Del.C.* § 2711 which directs that "[t]he salaries of *state officials and employees* shall be paid semi-monthly," thus recognizing a distinction between "employees" and "officials" within the basic statute which directs the State Treasurer to pay all State salaries. Since 29 *Del.C.* § 6532(a) as originally enacted authorized only a supplement to the "salary" of State "employees" without more, the decision reached herein would appear compatible with this existing statutory recognition of two separate categories of public servants for payment-of-compensation purposes.