WIRTH & HAMID FAIR BOOKING, INC., et al., Respondents, *v.* FRANK WIRTH et al., Appellants.

(Argued June 5, 1934; decided July 3, 1934.)

*I. Maurice Wormser, A. L. Geilich* and *Irving Mariash* for appellants.

216

*Arthur Hutter* for respondents.

LEHMAN, J.   As part of a contract for the sale of the stock of Wirth & Hamid Fair Booking, Inc., the defendant Frank Wirth agreed that for the term of seven years he would not engage within a specified territory in " the booking and/or supplying of theatrical artists and/or entertainers of any kind or character, whose services are to be performed in any fair, park, celebration, pier, carnival, circus (*except as hereinafter provided*) style show or pageant, fireworks at parks and/or fairs, auto races at parks and/or fairs, or any of them   *   *   *." The purpose of the restrictive clause was to prevent Frank Wirth, who had previously conducted the business of the plaintiff corporation, from competing in the business of that corporation and thus destroying or diminishing the value of the good will of the corporate business. Wirth was at that time interested in a circus, and the

parties to the contract understood that he intended to continue booking that circus. In order to permit that, the general restrictive covenant was made subject to specified exceptions in regard to booking performers at a circus.

Concededly the defendant Wirth has, since the execution of the contract, attempted to book his circus at various fairs and piers and parks, and he did book his circus at a fair of the Maryland State Fair and Agricultural Society of Baltimore. He claims that in so doing he has kept strictly within the exception to the restrictive covenant. The plaintiffs, claiming that these acts constitute a violation of the restrictive covenants, have brought this action in which they seek a judgment, declaring that the defendant Wirth has breached and violated the contract, and enjoining him from continuing such violation, and from carrying out contracts which it is claimed were made in violation of the restrictive clause.

The complaint incorporates the contract between the parties. By its terms the restrictive covenant is made subject to the exception that "notwithstanding the restrictive covenants contained in this subdivision, the party of the first part herein, however, shall have the right and privilege to conduct, operate, control, book and engage theatrical artists for one circus and/or specialty show in any of the states and provinces enumerated in this subdivision during the months of November, December, January, February, March and April of each year * * * and the said party of the first part shall have the right and privilege to conduct, operate, control, book and engage theatrical artists for two circuses and/or specialty shows in any of the states and provinces enumerated in this subdivision during the months of May, June, July, August, September and October in each year."

The restrictive covenant by its terms precludes the defendant from booking performers at any " circus except

as hereinafter provided." The subsequent provisions permit the defendant to book performers for one circus during the winter months and for two circuses during the summer months. The defendant has not booked more, and it is not shown that he is endeavoring to book more. Therefore, the plaintiffs have failed to show that the defendant has violated that part of the restrictive covenant which in terms precludes the booking of artists or entertainers whose services are to be performed at a *circus*. They do not, however, rely primarily upon that part of the restrictive covenant. The restrictive covenant is not confined to the booking of entertainers whose services are to be performed at a *circus*. The restriction by its terms applies to the booking of artists or entertainers whose services are to be performed in " any *fair*, *park*, celebration, pier, carnival, *circus except as hereinafter provided*, style show or pageant, fireworks at parks and/or fairs, auto races at fairs or any of them." If the words " circus except as hereinafter provided " had been omitted from this enumeration, the omission would not have resulted in excluding from the restrictive covenant the booking of entertainers whose services would be performed in " any fair, park, celebration, pier or carnival," though in connection with a circus. Because these words are included in the enumeration, the scope of the restriction is broadened so that it now embraces booking of performers in a " circus except as hereinafter provided," though the performance does not take place in " any fair, park, celebration, pier or carnival." The question then arises whether the parties, by the use of the words " circus except as hereinafter provided," intended not only to extend the restrictive covenant to include a circus which does not come within the exception as thereinafter provided, though not performed in a fair, park, celebration, pier or carnival, but also to exclude, from the scope of the other restrictions, performances at such a place but in connection with a circus for which

the defendant would otherwise be permitted to book performers in accordance with the subsequent provisions of the contract.

It may be argued that in accordance with a strict grammatical construction of the restrictive covenant, the inclusion in the enumeration of a " circus except as hereinafter provided " does not limit the scope of the other prohibitions there enumerated. We search a contract to discover the intention which the parties have formulated in its written language. Often punctuation and grammatical construction are reliable signposts in the search. At times the language of a contract, read as a whole and in the light of the circumstances surrounding its execution, may disclose an intention which would be thwarted by a strict grammatical construction. We refuse to follow a signpost when it appears that it points in the wrong direction. Intention may be formulated in words that are not strictly accurate, and in terms that are not grammatical. Here the language of the contract shows clearly that the parties intended that the defendant should, notwithstanding the restrictive covenants, have the right to book performances for two circuses during the summer months. To that extent there is an exception to the restriction which would otherwise exclude the booking of performers for any circus. Whether the more general restrictions upon the booking of entertainers to perform at specified places were intended to apply to these two circuses can, perhaps, not be determined solely by grammatical construction of the language of the contract. Because of possible doubt there, the plaintiffs have alleged in the complaint that such was the intention of the parties and that they so agreed. The complaint, for that reason, after the prayer for a declaratory judgment and an injunction, asks that " if it should become necessary to obtain the relief hereinbefore prayed for, that the said contract Plaintiffs' Exhibit A, be reformed and corrected."

The trial resulted in a decision that the contract in clear language excepted bookings for two circuses during the summer months from all the restrictive covenants, and that the plaintiffs were not entitled to a reformation of the contract which should provide that the restrictions as to the place of performance applied to such circuses. Judgment was entered dismissing the complaint. The Appellate Division reversed the judgment upon the law and the facts. It held that the contract in clear language provided that the restrictive covenant as to the place for which performances might be booked should apply even to the two circuses for which the defendant might book performers. It further held that the parol testimony clearly showed that the parties so intended and understood, and that the plaintiffs would be entitled to a reformation of the contract if the language of the contract failed to carry out such intention. New findings of fact and conclusions of law were made, and judgment entered in favor of the plaintiffs enjoining the defendant from continued violation of the restrictive covenant or carrying out any contracts for a performance at a fair, park, celebration, pier, carnival, etc. The judgment also provided for the specific performance of another clause of the contract to which we shall refer hereafter.

In its opinion, the Appellate Division has set forth the evidence upon which it bases its finding that the parties intended and agreed that the defendant Wirth should be permitted to book performers for two circuses, only provided that such circuses were not exhibited at a fair or park or any other of the places or types of performances referred to in the restrictive clause of the contract. The record fully sustains that finding. Even without the parol testimony that intention is manifested by the language of the written contract. True, the parties might have used language that would have eliminated room for dispute. None the less, a fair construction of the restrictive covenant and its exception, whether

read alone or in connection with the other clauses of the contract, supports the plaintiffs' contentions. If there is ambiguity or doubt it is removed by the parol testimony.

The plaintiffs have, thus, established their right to an injunction against future breach of the restrictive clause through the booking of any circus at a fair. They have asked, and the judgment grants them, more. In accordance with the terms of the contract the plaintiffs delivered a series of notes in payment of the purchase price. Some of these notes had been paid at the time this action was begun. Eight notes were not yet due and were held by the defendant Monheimer. The contract provides that the parties, recognizing that a breach by the defendant Wirth of the restrictive covenants "would materially reduce the value of the stock * * *" and "recognizing the difficulties involved in establishing the actual damage resulting from a breach of any of such restrictive covenants," have agreed that at the commencement of any action for a breach of these covenants the remaining outstanding notes shall be delivered to Monheimer, and that payment of any notes falling due during the pendency of the action be made to Monheimer, and that upon the final determination in favor of the plaintiffs of such action, Monheimer should deliver to them the moneys collected and the notes received. The judgment in plaintiffs' favor contains a provision for such payment.

The result of the judgment then is that the plaintiffs have an injunction against the further breach of the restrictive covenant, yet they are absolved of any obligation to pay the notes which became due after the commencement of the action, though these notes constitute a considerable part of the purchase price. Indeed, if the breach had occurred and an injunction had issued before any notes became due, the plaintiffs would have obtained the full benefit of the contract and have been absolved from payment of almost the entire purchase price.

We may assume that the provision which the judgment specifically enforces was intended as an agreement for stipulated damages. We may further assume that the plaintiffs could enforce that agreement, though strong argument might be made to the contrary. Even so, it is quite plain that the plaintiffs cannot ask an injunction against a breach and at the same time claim liquidated damages for such breach. In a similar situation it has been said that the "plaintiffs have an option to elect between but cannot adopt both remedies. If they elect to take liquidated damages there is no room for an injunction, for the £100 damages is all they are entitled to. If, on the other hand, they elect, as they do here, to take an injunction, they may have it, but they cannot have judgment as well for the £100 liquidated damages." (*General Accident Assurance Corp.* v. *Noel*, [1902] 1 K. B. 377.)

Payment of damages for a breach of contract constitutes satisfaction for the injury caused by the breach. That is true regardless of whether the damage has been fixed by agreement of the parties or by judicial decree. The remedy at law for a breach of contract is the collection of damages. Only where that remedy is inadequate may the equitable remedy of specific performance be invoked. A decree of specific performance is in effect and, in this case, even in form, an injunction to prevent a breach of the contract. Quite obviously a suit for injunction against a breach of contract is inconsistent with a claim for damages caused by the same breach. There cannot be any injunction which will prevent an injury where satisfaction for such injury has already been given.

True, there may be successive breaches of the same contract or covenant, and each new breach may cause new damages and give rise to a new cause of action. Then an injunction against a breach which is threatened may not be inconsistent with a recovery for damages suffered by a previous breach. So, too, a court of equity may

enjoin a continuing wrong for which damages would not furnish an adequate remedy, and even in the same action award damages for injury already caused to the plaintiff. (*Lynch* v. *Metropolitan El. Ry. Co.*, 129 N. Y. 274.) In such cases an injunction and an award of damages are not inconsistent. Together they furnish a complete remedy for injuries threatened and suffered. That is not true, of course, where the damages constitute a satisfaction both for injuries suffered and injuries that may follow in the future.

Liquidated damages constitute the compensation which, the parties have agreed, must be paid in satisfaction of the loss or injury which will follow from a breach of contract. They must bear reasonable proportion to the actual loss. (*Seidlitz* v. *Auerbach*, 230 N. Y. 167.) Otherwise an agreement to pay a fixed sum, upon a breach of contract, is an agreement to pay a penalty, though the parties have chosen to call it "liquidated damages," and is unenforceable. The restrictive covenant in this case was inserted in order to protect the good will of the business. The stipulation for the forfeiture of the right to enforce the notes upon a breach of that covenant cannot be regarded as "liquidated damages" and enforced accordingly, unless the parties fixed that sum as a reasonable estimate of the loss that would follow from "a material interference with the good will of the business." (*Hackenheimer* v. *Kurtzmann*, 235 N. Y. 57, 66.) Then the payment of such stipulated damages would completely satisfy the injury caused by such "material interference." The damages cannot be retained merely as compensation for the loss already suffered through that injury. The stipulated damages were estimated and agreed upon because, as the parties state in their contract, they recognized that a breach "would materially reduce the value of the stock," and recognized also the "difficulties involved in establishing the actual damage resulting from a breach." The parties thus fixed the entire

damage, and their stipulation becomes unenforceable when the plaintiffs invoke a remedy which will protect them against the damages that might follow in the future from the breach.

Indeed there was, at one time, doubt whether a party might invoke the equitable remedy of injunction against a breach of a contract where the parties had stipulated the amount of damages which should be paid upon such breach. Argument was made that a provision for liquidated damages must be construed as providing the alternative rights in the promisor to perform his promise or pay the liquidated damages as the price of non-performance. In *Diamond Match Co.* v. *Roeber* (106 N. Y. 473, 486) this court has settled the rule in this State, saying: " It is a question of intention, to be deduced from the whole instrument and the circumstances; and if it appear that the performance of the covenant was intended, and not merely the payment of damages in case of a breach, the covenant will be enforced. It was said in *Long* v. *Bowring* (33 Beav. 585), which was an action in equity for the specific performance of a covenant, there being also a clause for liquidated damages, ' all that is settled by this clause is that if they bring an action for damages the amount to be recovered is £1,000, neither more nor less.' " If a decree is made for specific performance, the provision for stipulated damages cannot be enforced; for the distinction between payment of a fixed sum as penalty or as stipulated damages upon a breach of contract becomes unsubstantial when an action is brought for an injunction against a continuance of the breach. (*Ropes* v. *Upton*, 125 Mass. 258.) Conversely where there has been a recovery of stipulated damages in an action at law, there can be no subsequent action for an injunction. (*Soainter* v. *Ferguson*, 1 Macnaghten & Gordon, 286.)

We have not overlooked the claim of the plaintiffs that in this case they are not seeking damages stipulated for

non-performance of a covenant, but are seeking solely to enforce the contract in all its terms, and the contract itself relieves the plaintiffs of any obligation for further payments thereunder. The clause under consideration is intended to compensate the plaintiffs for loss suffered by a breach of contract. It is immaterial whether we call the clause one for a penalty, for stipulated damage, or for a termination of the plaintiffs' obligations under the contract. Regardless of the form of covenant which the parties adopted, invocation of the equitable remedy against a breach of contract is inconsistent with the assertion of a right which the parties have agreed should accrue as compensation for all the loss that may follow from the breach.

The plaintiffs are entitled to a complete remedy for the defendant's breach of contract — neither more nor less. A judgment that compels the defendant to perform his contract and at the same time permits the plaintiffs to retain the price of performance or which awards them compensation for non-performance would give them more than they are entitled to. A judgment which fails to award them damages for loss suffered in the past, though it compels performance in the future, would furnish them incomplete relief. The judgment of the Appellate Division should be modified by striking therefrom the provision that the defendant Monheimer should pay the moneys and notes to the plaintiffs and also the award of costs against Monheimer and by providing that a referee be appointed to fix the amount of the damages suffered by the plaintiffs through the defendant's breach of contract.

The judgment should be modified in accordance with this opinion and as so modified affirmed, without costs.

POUND, Ch. J., CRANE, O'BRIEN, HUBBS, CROUCH and LOUGHRAN, JJ., concur.

Judgment accordingly.