Antonio Bonanno *et ux. vs.* Joseph Bollo.

DECEMBER 31, 1946.

Present: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

FLYNN, C. J.   This action in trespass and ejectment is before this court on the defendant's exception to a decision rendered by a justice of the superior court, sitting without a jury, in favor of the plaintiffs for possession and costs.

The facts are not disputed.   Plaintiffs are the owners of a one-story commercial building situated at 64 Taunton avenue in the town of East Providence, in this state.   It is approximately 40' long by 18' wide and is located within a defense-rental area under the provisions of the emergency price control act of 1942.   Defendant is a tenant thereof

from month to month commencing on the first day of the month. These premises had been rented originally to defendant for use as a commercial photographer's shop and business and they were so used on the effective date of the federal rent control regulations and also when the notice to vacate was served.

From about 1941, however, the defendant had been living in a space, about 10' x 10', which he had partitioned off in a corner of the back room of said photographer's shop. This space contained a sink and lavatory facilities which also had been and were used in connection with the front or business portion of the premises. The latter contained photographer's equipment of all kinds and was much larger in area and rental value than the portion which defendant had partitioned off and was using as living quarters.

Apart from regulations under the act, if applicable, the notice to vacate was duly served and other proceedings required by the law of this state were duly taken by the plaintiffs. No certificate or testimony from the administrator of the federal rent control regulations, showing compliance therewith, was presented in evidence. A printed copy, however, entitled "Rent Regulation for Housing with Official Interpretations Revised July 1, 1945" and issued by the office of price administration in Washington, D. C., war introduced in evidence without objection.

The trial justice found that the defendant had been living in a portion of the back room of the rented premises and that he had no other dwelling place; but he also decided that, according to all of the tests as stated in the published official interpretations of the federal rent control regulations, the premises in question were rented and used for a store and business purpose. He held therefore that proof of compliance with the act, by certificate or otherwise, was not required in order that plaintiffs might properly proceed to recover possession thereof.

The defendant contends that the trial justice was in error. In support thereof he argues that the act and proper regu-

lations thereunder are plain and unambiguous; that official interpretations, therefore, were not a proper standard by which to determine the case; and that any part of a building, if used by a tenant as a dwelling, even if such use be interrelated with and inseparable from a primary and predominant commercial use of those premises, nevertheless is devoted to "living or dwelling purposes" and comes within the definition of "housing accommodations" under the act and regulations. Therefore defendant argues that plaintiffs were bound to show by evidence that they had satisfied the procedural requirements under the act and rent regulations as a condition precedent to their right to recover possession. He also contends that the official interpretations by the administrator amounted, in effect, to an extension of the provisions of the act, which extension was beyond the power of the administrator to accomplish but could be enacted only by the congress.

In our opinion the real issue is whether the use of these premises for both commercial and dwelling purposes, as established by the evidence, brings them within the meaning of "housing accommodations", as contemplated by the rent regulations in the act, so as to require proof of compliance therewith before recovery of possession may be granted to the plaintiff.

It is agreed that the answer thereto is to be found in the definition of "housing accommodations" in the Emergency Price Control Act of 1942, Tit. 50, U.S.C.A. App., §942 (f). The pertinent portion thereof reads: "The term 'housing accommodations' means any building, structure, or part thereof, or land appurtenant thereto, or any other real or personal property rented or offered for rent for living or dwelling purposes (including houses, apartments, hotels, rooming or boarding house accommodations, and other properties used for living or dwelling purposes) together with all privileges, services, furnishings, furniture, and facilities connected with the use or occupancy of such property."

It will be seen that the definition of "housing accommo-
dations" in the act does not end with the general descrip-
tion of "property rented or offered for rent for living or
dwelling purposes", as the defendant's argument seems to
assume. From this he proceeds to argue that these words
are plain, unambiguous and comprehensive, and that there-
fore no official interpretation was needed or proper. De-
fendant apparently overlooks or ignores the other language
that immediately follows, as a part of the same sentence
and definition. That language is within the parentheses as
follows: "(including houses, apartments, hotels, rooming
or boarding house accommodations, and other properties
used for living or dwelling purposes)". This enumeration
of different types of property obviously was intended by
congress to clarify what was meant by the preceding gen-
eral language "property rented or offered for rent for living
or dwelling purposes". Evidently congress itself anticipated
some possible misunderstanding or ambiguity unless such
clarifying language was added.

If we interpret the sentence as a whole, giving all words
their ordinary meaning, it seems reasonable to conclude that
the only kind of property, or part thereof, that congress in-
tended to place under "housing accommodations", were
buildings of the type that were therein enumerated. These
significantly relate to properties that clearly and ordinarily
are known to be devoted to "living or dwelling purposes"
almost exclusively, as distinguished from commercial struc-
tures in which only a very small portion might happen to
be used as living quarters by a tenant of the commercial
portion thereof.

In our opinion the act is plain and unambiguous but not
in the sense for which the defendant contends. On the con-
trary, it would seem clear from the language of the defini-
tion as a whole that congress did not intend to provide that
a real business property or building, an insignificant por-
tion of which was also being used by the tenant thereof as
his living quarters, was thereby converted from its primary

purpose into a dwelling or housing accomodation within the purview of the act.

However, if the explanatory language within the parentheses, above quoted, did not thus make clear the preceding provision, then in our opinion the resulting definition of housing accommodations, considered as a whole, was ambiguous. It therefore would require an interpretation by the trial justice. In determining the meaning intended by congress, he was entitled to make use of all aids that are generally recognized as legitimate in construing such a statute. The official interpretations of the act, if not inconsistent with its provisions and purpose, might also be considered by the trial justice as an aid in reaching his conclusion but they would not be controlling.

Considering that the act takes away from an owner certain of his rights that were well established at common law, its provisions should not be extended or limited by construction beyond the fair import and necessities of its language and declared purpose. If the definition of housing accommodations is interpreted as a whole, using all such legitimate aids to determine its intended meaning, as above indicated, we are of the opinion that the trial justice's conclusion was correct, and that "housing accommodations" under the act were not intended to include such an extreme case as the defendant presents.

In the instant case, apart from the official interpretations of the act, it is clear that the premises were offered for rent and rented primarily and predominantly for use as a commercial photographer's shop rather than as a dwelling. The portion used by the defendant for his living quarters cannot be separated from the primary commercial use of the premises. The living quarters could not be entered without using part of the premises devoted to the business, and the business portion required the continual use of the facilities in the back room. The part used for commercial purposes exceeded, in area and in rental value, the part partitioned off and used by the defendant as his living quarters. In our

opinion, according to all reasonable and appropriate standards, these premises cannot be held to have been rented for "living or dwelling purposes" within the contemplation of the act.

In a case involving maximum rent controls under another provision of this act, where premises were used predominantly for business and only incidentally for living purposes, in much the same manner as here, it was held by a federal circuit court of appeals that such premises were not a dwelling within the contemplation of "housing accommodations" under the act. *Morrison* v. *Taylor,* 145 F. 2d 466.

We are of the opinion, therefore, that the interpretation which the trial justice placed upon the definition of "housing accommodations" in the act was correct; that he correctly decided that the premises here did not come within such definition; and that therefore no proof of compliance with defense-rental regulations under the act was necessary in order to entitle the plaintiffs to recover possession thereof.

The defendant's exception is overruled, and the case is remitted to the superior court for the entry of judgment on the decision.

*A. Louis Rosenstein, Leo L. Jacques,* for plaintiffs.

*Ernest L. Shein,* for defendant.