Chief Judge Breitel (dissenting).
I dissent and vote to *913 affirm. The trial court’s conclusion that it lacked power to reform the lease, even if erroneous, does not require remittal because the court also concluded, correctly, that, aside from any absence of power, there was insufficient proof to support the lessors’ contention that the lease contained a typographical error. By implication, inferable from its memorandum, the Appellate Division reached the same conclusion with respect to the insufficiency of the proof. Since the trial court’s apportionment of damages, affirmed by the Appellate Division, was in accordance with the terms of the lease, there should be an affirmance.
Determinative of the allocation of the award in eminent domain are, of course, the terms of the lease from the Castellanos, as lessors, to Yonkers, the current lessee (see Matter of City of New York [Allen St.], 256 NY 236, 242-243). Paragraph 12 of the lease deals with the respective rights of the parties in the event of a taking in éminent domain. Clauses (a) and (b) of paragraph 12 refer to the effect on the lease itself of a total or partial taking. It is the next two clauses, (c) and (d), dealing with apportionment of condemnation awards, that are of concern in this litigation.
Clause (c) of paragraph 12 defines the lessee’s right to compensation in eminent domain: "(c) It is expressly understood and agreed that no part of any award, however, shall belong to the Lessee except that part of any award relating to the value of the building or buildings taken and Lessee’s interest in leasehold if any award is made therefor, less depreciation. No such depreciation shall be deemed to take place during the first two years of this lease. Thereafter, such depreciation shall be conclusively presumed to be at the rate of one (1%) per cent per year and the Lessee’s award shall be reduced accordingly. Subject to the foregoing provisions it is expressly agreed that the Lessee shall be entitled to any award made for the building or buildings, and for the Lessee’s interest in the leasehold, if any is awarded by the Court.” Thus, the lessee is entitled to recover for the value of its leasehold, that is, the capitalized excess of market rental value over the rent reserved, and for the value of the buildings. The language dealing with depreciation provides an adjustment for valuing the buildings, but would have no economic or legal application to valuing the leasehold. A leasehold does not depreciate in the sense that term is normally used; a leasehold’s value may decline but the declina *914 tion is a function of capitalizing the excess of the market rent over the reserved rent for the balance of the lease period.
Clause (d) allocates the remainder of any condemnation award to the lessors: "(d) Awards for the value of the land and the value of the buildings and improvements as of the end of the term herein, and the Lessors’ interest in and to the value of its leasehold, if any is awarded, are hereby assigned to the Lessors and they are given complete authority to collect the same.” One must note that the reference in clause (d) to the lessors’ right to the award for the land, the buildings, and improvements is limited to what they would have received, in the words of the clause, "as of the end of the term” of the lease. On the other hand, the lessee is entitled under clause (c) to the value of its "interest in leasehold”; namely, as stated earlier, the capitalized excess of market rental value over the rent reserved. The lessors are, therefore, entitled to the value of the reversion in the land, building, and improvements, and the value of their interest in the lease, which is limited to the capitalized value of the rent reserved. Thus, clauses (c) and (d), taken together, account for all the value in the property.
The difficulty, if there be difficulty, arises from a single grammatical error in clause (d). The lessors, a group of three brothers, are granted their interest "in and to the value of its leasehold”, rather than their leasehold. On this mistake, the lessors’ entire case is based. They contend that the linguistic inconsistency resulted not from a grammatical slip, but from a typographical error substituting "lessors” for "lessee”. In other words, they interpret the clause to grant to the lessors "the lessee’s interest in and to the value of its leasehold.”
As principal support for this position, plaintiffs note that nowhere else in the lease was this grammatical error repeated. This absence of repetition of error has little probative force—certainly no more than would a failure to repeat the alleged typographical error.
Aside from the lack of evidence presented, plaintiffs’ argument is intrinsically unpersuasive. First, the occasion for the grammatical error involved is easily understood. One need only think of the landlord as a single entity rather than three brothers to see how the error could have been committed. In fact, the very same grammatical error appears in the Court of Claims opinion, referring to the Castellanos’ rental loss as "its rental loss.” Second, and more important, the change suggested by plaintiffs is not in harmony with the other terms of *915 the lease. Were plaintiffs’ contention accepted, clause (c) would award the value of the lessee’s interest in the leasehold to the lessee, and clause (d) would award that same interest to the lessor.
It is true that grammatical construction is often a "reliable signpost” in discovering the intention of the parties. But it is also true that "[a]t times the language of a contract, read as a whole * * * may disclose an intention which would be thwarted by a strict grammatical construction. We refuse to follow a signpost when it appears that it points in the wrong direction.” (Wirth & Hamid Fair Booking v Wirth, 265 NY 214, 219 [Lehman, J.].) In this case, the lessors’ grammatical argument places undue emphasis on a single phrase, rather than reading that phrase as it must be read, in the context of the writing as a whole (see Empire Props. Corp. v Manufacturers Trust Co., 288 NY 242, 248).
Thus, the trial court made no error in finding plaintiffs’ proof insufficient to support the contention of typographical error. It matters not that the court also concluded, independently, and erroneously, that it lacked power to correct such an error. That error does not affect the finding on sufficiency of proof. The trial court had a full record before it, without exclusion of any material proof proffered by plaintiffs. The proof consisted almost exclusively of opinions elicited or sought to be elicited on cross-examination of the witnesses for Yonkers and a lawyer witness for the Castellanos who gave his opinion as an expert with respect to the existing language of the condemnation clause. There is no reason to believe that a new trial would produce any additional evidence on this point. In the absence of the exclusion of other admissible evidence offered, and there was none, a pure question of law is presented which can be and should be resolved by this court.
What remains is to consider the Court of Claims’ distribution of the condemnation award in light of the lease terms. The lessors, the Castellanos, were awarded the value of their reversionary interest, together with "the present worth of its rental loss” (meaning "their” rental loss) under the lease. This is precisely the amount to which they were entitled under clause (d) of paragraph 12 of the lease, as developed above. Hence the court’s apportionment of the award was correct.
Moreover, substantial economic justice, a factor important and, arguably, determinative of the grammatical error, supports the result reached by the Court of Claims. The signifi *916 cant economic cause of the controversy is, of course, the large increase in the value of the property since the lease was first made in 1958. The land value of the entire Castellano parcel, before the taking, as found by the trial court, was about 2.5 million dollars. Yet, the rent reserved under the Castellano lease at the time of the taking was only $30,000 per year. Hence, the lease terms had become quite unfavorable to the Castellanos. Of course, the courts are and should be powerless to correct an intentional bargain which turns out to be unfavorable for one side, as it might have turned out for the other side.
Once the value of Yonkers’ leasehold interest is subtracted, the Castellanos’ fee interest in property subject to a 102-year lease, with 90 years of the term remaining, is not very valuable. An award for more than loss of the rent reserved under the lease and the reversion interest would significantly overcompensate the Castellanos.
In summary, the award was apportioned as the lease provides explicitly; the apportionment is in accord with the economic sense of the transaction; and there is no ambiguity in the lease requiring construction or interpretation beyond the obvious change from a singular to a plural possessive adjective. Most important, the trial revealed no proof or offer of proof by the lessors to establish their unlikely contention. The issue gave no trouble to the courts below and it is strange that it gives trouble to this court.
Accordingly, the judgment appealed from and the order of the Appellate Division brought up for review should be affirmed.
Judges Gabrielli, Jones, Wachtler and Cooke concur in Per Curiam opinion; Chief Judge Breitel dissents and votes to affirm in a separate opinion in which Judges Jasen and Fuchsberg concur.
Judgment appealed from and order of the Appellate Division brought up for review reversed, without costs, and the case remitted to the Court of Claims for further proceedings in accordance with the opinion herein.