DECISION
Before this Court are the cross-motions for partial summary judgment of Defendants and Third-Party Plaintiffs Joseph LaMountain, Earl LaMountain, and Elizabeth LaMountain ("the LaMountains") and Third-Party Defendants Tim Hortons (New England), Inc. ("Tim Hortons) and Ace American Insurance Company ("Ace"). The LaMountains and Tim Hortons dispute whether Tim Hortons's insurance policy with Ace covers a slip and fall incident which occurred in a parking lot owned by the LaMountains and located immediately outside a Tim Hortons store. For the reasons set forth below, this Court now grants the LaMountains' motion and denies Tim Hortons's and Ace's motion.
 I Facts
The following facts are undisputed. Prior to June 9, 2004, Tim Hortons assumed a lease from Bess Eaton Donut Flour Co., Inc. ("the Lease"). Under the Lease, the LaMountains granted Tim Hortons the right to use certain premises to purvey "pastry items, coffee, tea and other non-alcoholic *Page 2 
beverages and to provide tables, chairs and counters for patrons to sit at while consuming said items. . . ." (Lease at 2.) The Lease describes these premises as "a space designated as Unit 1 on Exhibit A attached hereto and made a part hereto by reference (approximately twenty by sixty feet), on the west side of the building known as the Richmond Shopping Center located on Main Street, Wyoming, Rhode Island."Id. Lease ¶ 1, entitled "PREMISES," provides that the LaMountains agree to "demise[] and lease[] unto [Tim Hortons] the premises described above, together with the right in common with other tenants [sic] and/or licensees of [the LaMountains] entitled thereto, the use of the parking areas which [the LaMountains] may designate for use by [Tim Hortons], its employees, and invitees." (Lease at 2.) The Lease further provides that Tim Hortons must keep "the sidewalks and ways adjacent to the premises free and clear of snow and ice" and "pay to [the LaMountains] 11% of all monies expended by [the LaMountains] for the cost of insurance and all costs of keeping and maintaining common areas. . . ." (Lease at 6.) At the same time, the Lease provides that Tim Hortons must maintain insurance to indemnify the LaMountains "against any and all injury, loss, or damage of whatever nature, to persons or property arising out of the use or occupancy of the premises. . . ." (Lease at 7.)
Pursuant to the terms of the Lease, Tim Hortons purchased a general commercial liability policy from Ace ("the Policy"). The Policy contains an "Additional Insured" endorsement, which provides blanket coverage to "all lessors where required by written contract . . . with respect to liability arising out of the ownership, maintenance or use of that part of the premises leased to you and shown in the schedule. . . ." The schedule shown on the additional insured endorsement contains a space for "Designation of Premises (Part Leased to You)"; this space *Page 3 
was left blank. It is undisputed that the Policy was effective from January 1, 2004 to January 1, 2005.
On June 9, 2004, Plaintiff Michelle Schwank alleges that she slipped and fell in a parking space located adjacent to the twenty by sixty foot portion of a building owned by the LaMountains and leased to Tim Hortons. Thereafter, Plaintiff filed suit against the LaMountains. The LaMountains filed a third party complaint against Tim Hortons and Ace, on the grounds that Tim Hortons was required to insure against all liability arising out of the use of the premises.
On March 3, 2009, the LaMountains filed this motion for partial summary judgment asserting that, on the undisputed facts outlined above, either Ace must defend and hold harmless the LaMountains pursuant to the Policy's additional insured endorsement or Tim Hortons breached the Lease by failing to purchase sufficient insurance. Tim Hortons and Ace filed a cross-motion for summary judgment asserting that neither has any duty to the LaMountains pursuant to the Lease or the Policy. After careful review of the Lease, the Policy, and the parties' arguments, this Court now holds that Ace owes a duty to defend and hold harmless the LaMountains pursuant to the additional insured endorsement to the Policy.
 II Standard of Review
On a motion for summary judgment, the moving party has the initial burden of (1) bringing forth admissible evidence to suggest that there is no genuine issue of material fact, and (2) establishing that the moving party is entitled to judgment as a matter of law. SeeOlshansky v. Rehrig Intern., 872 A.2d 282, 286 (R.I. 2005). To survive a motion for summary judgment, the non-moving party need only bring forth admissible evidence to demonstrate that there is a genuine issue of fact material to the legal issues of the case. Id. The hearing justice must view *Page 4 
the evidence in the light most favorable to the non-moving party, and may neither weigh the evidence nor otherwise attempt to resolve factual disputes. See Palmisciano v. Burrillville Racing Ass'n, 603 A.2d 317,320 (R.I. 1992).
This standard reflects the policy that summary judgment is "a drastic remedy" that "should be dealt with cautiously." Estate of Giuliano v.Giuliano, 949 A.2d 386, 390 (R.I. 2008). Overall, the court should only grant a motion for summary judgment where there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. See Olshansky, 872 A.2d at 286.
 III Analysis
The issue here is whether the Policy covers a slip and fall incident which occurred in a parking lot owned by the LaMountains and located immediately outside a Tim Hortons store. The LaMountains argue that the Policy does cover this incident, first because the incident occurred on "the premises" as defined by the Policy, and second because the incident arose out of Tim Hortons's use of the premises even if the incident did not occur on the premises. If the Policy does cover this incident, then Ace owes the LaMountains a direct duty to defend under the additional insured endorsement. Tim Hortons and Ace argue that the incident did not occur on the premises, which they argue includes only the store itself and not the parking lot, and that the incident did not arise out of Tim Hortons's use of the premises because the incident did not occur sufficiently near the store.
The starting point for the Court's inquiry is the language of the Policy itself. "It is well established that [the Court] applies the rules for construction of contracts when interpreting an insurance policy and that [the Court] shall not depart from the literal language of the policy absent a finding that the policy is ambiguous." Lynch v.Spirit Rent-A Car, Inc., 965 A.2d 417, *Page 5 
425 (R.I. 2009) (internal quotation omitted). "When a contract is determined to be clear and unambiguous, then `the meaning of its terms constitute[s] a question of law for the court. . . .'" Irene RealtyCorp. v. Travelers Property Cas. Co. of America, ___ A.2d ___,2009 WL 1576517, *4 (R.I. 2009) (quoting Cassidy v. Springfield Life Insurance Co.,106 R.I. 615, 619, 262 A.2d 378, 380 (1970)). To determine whether a contract is ambiguous, the court must consider the contract "in its entirety, giving words their plain, ordinary, and usual meaning."Mallane v. Holyoke Mutual Insurance Company in Salem, 658 A.2d 18, 20
(R.I. 1995). "[W]hile carrying out this task, the court should `refrain from engaging in mental gymnastics or from stretching the imagination to read ambiguity . . . where none is present.'" Irene Realty Corp. at *4 (quoting Mallane, 658 A.2d at 20).
In construing the terms of a contract, "[o]ften punctuation and grammatical construction are reliable signposts. . . ." Israel v.Chabra, 537 F.3d 86, 93 (2d Cir. 2008) (quoting Wirth Hamid FairBooking, Inc. v. Wirth, 265 N.Y. 214, 219, 192 N.E. 297, 299 (1934)). Of particular relevance here, "[a] parenthesis is in the nature of punctuation and is defined in Webster's New International Dictionary, 2d Ed., page 1776, to be: `A word, phrase, or sentence, by way of comment or explanation, inserted in, or attached to, a sentence which would be grammatically complete without it.'" Joslin v. Aetna Life Ins. Co.,67 R.I. 261, 21 A.2d 550, 551 (1941). "A parenthesis may be used for different purposes depending upon the context and upon the explanatory words used within it." Id. For example, "a parenthesis is frequently used to clarify some ambiguity which arises from the principal clause itself. . . ." Id. In other words, a parenthesis may "clarify what was meant by the preceding general language. . . ." Bonanno v. Bollo,72 R.I. 278, 282, 50 A.2d 621, 623 (1946). *Page 6 
Here, the additional insured endorsement covers lessors — the LaMountains — for liability arising out of the premises leased to Tim Hortons. The additional insured endorsement includes the phrase "Designation of Premises (Part Leased to You)." Although no description follows this phrase, the parenthetical "Part Leased to You" clarifies what is meant by "Premises" under the Policy. See Joslin,21 A.2d at 551. The natural meaning of the phrase "Part Leased to You" includes not only the property described as "the premises" in the Lease, but also everything actually leased to Tim Hortons. Pursuant to the Lease, the LaMountains "lease[d] unto [Tim Hortons] the premises described above, together with . . . the use of the parking areas. . . ." Because a portion of the parking area is leased unambiguously to Tim Hortons pursuant to the Lease, that same portion of the parking area is part of the premises covered by the Policy.[1] Accordingly, incidents occurring in that portion of the parking area leased to Tim Hortons, including the incident at issue here, are subject to coverage under the Policy as a matter of law.
Based on the Court's holding that the incident at issue here occurred on the premises as defined by the Policy, the incident unquestionably arises out of Tim Hortons's use of the premises.[2] Accordingly, this Court need not consider the arguments advanced by both moving parties as to whether the incident bears a substantial nexus to Tim Hortons's use of the premises *Page 7 
under any other test. Instead, this Court simply holds that the incident occurred on the premises as defined by the Policy, and therefore triggers Ace's duty to defend the LaMountains under the Policy as a matter of law.
 IV Conclusion
Because the Policy covers incidents occurring on the premises and defines the premises as the "Part Leased to You", and because the LaMountains leased to Tim Hortons the use of the parking area, the Policy covers incidents occurring in the parking area — including the incident at issue here. Accordingly, Ace owes the LaMountains a duty to defend and hold them harmless as a matter of law, and the LaMountains are entitled to partial summary judgment. The LaMountains' motion is granted.
Counsel for the LaMountains shall submit an order within ten days.
[1] Tim Hortons and Ace have suggested that this Court look to the definition of "the premises" provided in the Lease in order to define "the premises" as used in the Policy. This is unnecessary because the relevant document here — the Policy — itself defines the premises. The Lease is relevant only to the extent that the Policy defines the premises as the property actually leased to Tim Hortons. As is discussed above, by its plain and unambiguous terms, the Lease provides that the property actually leased to Tim Hortons includes a portion of the parking area.
[2] The LaMountains argue that this Court should employ a multi-factor test to determine whether the incident arose out of Tim Hortons's use of the premises. See Liberty Village Associates v. West American InsuranceCo., 706 A.2d 206, 211 (N.J.Super. 1998) (holding that relevant factors are: causal relationship, physical proximity, and maintenance responsibility). Tim Hortons and Ace argue that the relevant inquiry is whether the incident actually occurred on the premises. See Gillis v.DeMarkles, 1998 WL 141925, *4 (Mass.Super. 1998) (coverage is "limited to occurrences that took place on the leased premises"). Because the Court holds that the incident at issue here occurred on the premises, the incident arose out of Tim Hortons's use of the premises under either test. The Court does note, however, that the LaMountains' argument is more persuasive because Rhode Island law provides for a broad definition of the phrase "arising out of." See American Commerce Ins. Co. v.Porto, 811 A.2d 1185, 1194 (R.I. 2002) (quoting 7 Couch onInsurance 3d § 101:54 at 101-147-48 (1997)) ("The phrase `arising out of' within policy language is generally considered to mean `flowing from' or `having its origin in,' thereby `indicating that there only need be a causal connection. . . .'").